**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CHARLES HEAD,

    Plaintiff,

    v.

UNITED STATES OF AMERICA,
DR. MOHAMED MOUBAREK,
WARDEN H. BEARD,
TOM GERA,
JOHN DOE(S),
LOYD PEARSALL,
ALISON SMITH-FOOTE,

    Defendants.

Civil Action No.:  BAH-22-238

---

**MEMORANDUM OPINION**

Self-represented Plaintiff Charles Head, an inmate committed to the custody of the Federal Bureau of Prisons ("BOP") and currently confined to FCI-Englewood in Littleton, Colorado, filed this civil suit asserting claims under the Federal Tort Claims Act ("FTCA") and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), in connection with events taking place at FCI-Cumberland in Cumberland, Maryland, where he was confined at the time he filed suit. ECF 1.  Currently pending is a second motion to dismiss or for summary judgment filed on behalf of all named Defendants.  ECF 37.  Plaintiff opposes the motion, ECF 42, and Defendants have replied, ECF 45.  No hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2023).  For the reasons stated below, Defendants' motion, construed as a motion to dismiss, is GRANTED and Plaintiff's complaint will be dismissed, but Plaintiff is given thirty days to amend his FTCA claims based on Defendants' alleged failure to provide adequate medical care.

## I.  BACKGROUND

### A.    Procedural Background in this Court

As noted, Defendants' pending motion is the second such motion filed.  By Memorandum Order dated February 22, 2023, this Court dismissed Plaintiff's claims for injunctive relief as moot due to his transfer to a BOP facility in California.  ECF 35, at 3.  Defendants' first motion to dismiss or for summary judgment was filed on behalf of all official capacity Defendants and asserted that service on the individual capacity Defendants had failed.  ECF 17-1, at 30.  Given that service was later accepted on behalf of the personal capacity Defendants, this Court denied Defendants' motion without prejudice, subject to refiling on behalf of the Defendants in both their official and individual capacities.  ECF 35, at 3.  The currently pending motion is the renewed motion contemplated by the Court's Memorandum Order.

### B.    Factual Allegations

Plaintiff filed this case against the United States, Dr. Mohamed Moubarek, Warden H. Beard, Physician Assistant Tom Gera,[1] registered nurse Alison Foote, health administrator Loyd Pearsall, and an unknown BOP employee.  ECF 1, at 1.  Each Defendant, other than the United States, was named in both their individual and official capacities.  *Id.*  Defendants Moubarek, Gera, Foote, and Pearsall were members of the medical staff at FCI-Cumberland at all times relevant to this case.  *Id.* at 3.  Defendant Beard was the warden of FCI-Cumberland at all relevant times and, according to Plaintiff, "manage[d] [FCI-Cumberland's] day-to-day operations and execute[d] its policies."  *Id.*

---

[1] Plaintiff asserts that Defendant Gera is a nurse, ECF 1, at 3, but Defendants' filings clarify that he is a physician assistant, ECF 37-1, at 8.  Regardless, this distinction is not material to the case.

The factual allegations underlying Plaintiff's claims can be sorted into three categories: those relating to Defendants' management of the COVID-19 pandemic at FCI-Cumberland, those relating to Defendants' medical treatment of Plaintiff, and those relating to the opening of Plaintiff's legal mail.

1.   <u>COVID-19 at FCI-Cumberland</u>

Plaintiff alleges that he "suffers from asthma, a heart condition, prediabetes, hypertension, and various other medical conditions that render him vulnerable to severe illness upon contracting COVID-19." *Id.* at 4.  At the time relevant to the complaint, he was assigned a cell at FCI-Cumberland in "C-Unit" which he describes as a housing unit "consisting of approximately 128 [two]-man prisoner cells." *Id.*

According to Plaintiff, on January 31, 2020, the BOP released a memo that cautioned staff about the COVID-19 virus, and by February 29, 2020, the BOP's medical director published a warning of a possible pandemic and directing implementation of pandemic plans. *Id.* at 7.  Staff at FCI-Cumberland were issued Personal Protective Equipment ("PPE") which included one N95 respirator for each staff member. *Id.*  According to Plaintiff, staff members were required to reuse the N95 respirators more than five times despite the fact that the Center for Disease Control ("CDC") recommended that reuse of an N95 mask should occur no more than five times. *Id.* at 8. Plaintiff alleges that staff were forced to "bring their own paper towels, toilet paper, hand sanitizer, and sanitizing wipes from home because BOP failed to provide these items for their employees." *Id.*  Inmates simply did without these items because they had no ability to purchase them. *Id.*

Plaintiff describes staff shortages, inadequate supply of PPE, and failures to follow CDC guidelines at FCI-Cumberland as creating a condition that was so dire that "the Maryland Congressional Delegation wrote to William Barr, [then] Attorney General of the United States, on

3

May 4, 2020, urging his involvement to take measures to curb the spread of COVID-19 at FCI-Cumberland." *Id.* at 8–9 (citing Complaint Exhibit B, ECF 1-1, *Almond v. United States*, Civ. No. 1:21-02067-SSS (Fed. Cl. Oct. 25, 2021)).[2]  Plaintiff claims that by December 2020, over 200 inmates had tested positive for COVID-19 and further claims that, at the time he filed this complaint on January 31, 2022, FCI-Cumberland was experiencing another outbreak.  *Id.* at 9. Despite the spread of the illness, Plaintiff claims that medical staff refused to perform comprehensive testing or to conduct contact tracing.  *Id.*  According to Plaintiff, correctional staff were forced to work longer shifts during the pandemic and were required to move between COVID-19 positive units and units without infections, causing the officers to become potential "vectors of transmission."  *Id.*

On or about February 29, 2022, BOP memoranda called for "immediate isolation of symptomatic and COVID-19 positive inmates."  *Id.* at 9–10.  Plaintiff states that the CDC guidelines on testing protocols in correctional institutions advised separate physical locations for purposes of isolating individuals with confirmed COVID-19, individuals with suspected COVID-19, and the close contacts of those with confirmed cases.  *Id.*  Plaintiff states that the October 9, 2020, COVID-19 response guidelines issued at FCI-Cumberland provided that inmates who tested positive for COVID-19 were to remain in isolation at Health Services for a total of 28 days and were required to test negative before returning to general population.  *Id.*at 11.

On January 16, 2021, Plaintiff was tested for COVID-19 for the first time and had negative results.  *Id.* at 12.  That same day, Plaintiff states that numerous inmates in the C-1 housing unit

---

[2] The document cited by Plaintiff from the United States Court of Federal Claims is an attachment to a civil complaint filed on behalf of numerous FCI-Cumberland employees that has since been voluntarily dismissed.  *See* Complaint, ECF 1, *Almond v. United States*, Civ. No. 1:21-02067-SSS (Fed. Cl. Oct. 25, 2021); Order of Voluntary Dismissal, ECF 10, *Almond v. United States*, No. 1:21-cv-02067-SSS (Fed. Cl. Jan. 5, 2023).

where Plaintiff was confined tested positive for COVID-19. *Id.* Contrary to alleged policy, Plaintiff states that the inmates testing positive were not immediately brought to Health Services and placed in isolation, nor were they put into a separate physical location away from Plaintiff. *Id.* at 12–13. Rather, the inmates were left in the general population of the housing unit. *Id.* at 13. Plaintiff states he was therefore forced to use the same shower stalls as inmates with COVID-19, which he claims staff refused to clean or sanitize. *Id.* He further states that the officers refused to permit inmates to clean or sanitize the common areas and shared surfaces. *Id.* at 13–14.

On January 15, 2021, another man incarcerated at FCI-Cumberland had an asthma attack requiring his hospitalization. *Id.* at 14. When that inmate was admitted to the hospital, he tested positive for COVID-19. *Id.* Plaintiff claims that Defendant Dr. Moubarek told hospital staff on January 16, 2021, that the hospitalized inmate could be returned to the prison. *Id.* He was returned to reside in Plaintiff's housing unit on January 17, 2021, despite still being positive for COVID-19. *Id.*

On January 19, 2021, Plaintiff told the C-1 housing officer that he felt sick and needed medical attention. *Id.* at 14. Plaintiff claims that the officer told him he would let medical staff know and then walked away. *Id.* at 14–15. Plaintiff was not seen by medical staff that day. *Id.* at 16. The next day, on January 20, 2021, Plaintiff tested positive for COVID-19. *Id.*

Plaintiff explains that several factors increased his risk of contracting COVID-19 while he was confined to FCI-Cumberland. He states that correctional staff were not given N95 masks until May of 2020 despite the fact that there was a COVID-19 outbreak in late February 2020 and despite the fact that a BOP directive made it clear that staff should wear such a mask. *Id.* at 18. He also states that the U.S. Marshal's Service refused to stop voluntary transfers of inmates into and out of FCI-Cumberland, which increased the risk of exposure to both inmates and staff. *Id.* at

19.  According to Plaintiff, inmates who were COVID-19 positive were not immediately separated from their cellmates "or open bay mates who had pending test results." *Id.*  Despite their contact with coworkers and inmates during the pandemic, Plaintiff claims that numerous correctional officers refused to wear a mask, and the administration, including Warden Beard, refused to enforce BOP directives regarding correctional staff wearing appropriate PPE. *Id.* at 19–20. Plaintiff provides an example of a correctional officer working in the food distribution line without wearing any PPE, noting that when Plaintiff complained to the officer's supervisor, nothing was done. *Id.* at 20.

Although Plaintiff's initial COVID-19 infection cleared, he maintains that he continues to have symptoms such as fatigue, insomnia, depression, memory and concentration problems, joint pain, and headaches. *Id.* at 16–17.  He claims that the BOP does not have the facilities to provide close medical attention and monitoring required to care for his "Long COVID" symptoms. *Id.* at 17.

## 2.  Medical Treatment for Plaintiff's Asthma

Plaintiff states that when he asked medical staff for an inhaler for his asthma and treatment for his COVID-19 symptoms (*i.e.*, shortness of breath, severe headaches, debilitating fatigue, and loss of smell and taste) he was prescribed aspirin but not provided with an inhaler. *Id.* at 15–16. The day after Plaintiff tested positive for COVID-19, Plaintiff claims that he suffered an asthma attack. *Id.* at 16.  Plaintiff's cellmate told the duty officer that Plaintiff was having difficulty breathing, but because it was after normal business hours, no medical staff attended to Plaintiff. *Id.*

On January 22, 2021, when Plaintiff again asked for an inhaler, he again was not provided one. *Id.*  He continued telling every medical staff member he saw over the following two weeks

that he needed an inhaler, but he never received one.  *Id*.  Plaintiff claims that Defendant Gera told

him that he would not give Plaintiff an inhaler unless he wheezed in front of Defendant Gera during

an exam.  *Id*.  Defendant Gera also allegedly informed Plaintiff that there was no equipment

available to test for asthma.  *Id*.  According to Plaintiff, Defendant Dr. Moubarek also refused to

test or treat Plaintiff for asthma.  *Id*. at 24.  Plaintiff claims that Defendants Pearsall and Foote also

denied his requests for an inhaler.  *Id*. at 24–25.

### 3.  Plaintiff's Legal Mail

Additionally, Plaintiff claims that legal mail from his lawyers has been opened and read

continuously by unknown BOP staff at FCI-Cumberland.  *Id*. at 26–27.  He claims that on August

9, 2021, mail room staff opened legal mail from his attorney outside of his presence and read the

mail before delivering it to him.  *Id*. at 26.

### C.    Plaintiff's Claims and Defendants' Arguments

Plaintiff alleges that the BOP owed a duty of care to federal prisoners as stated in 18 U.S.C.

§ 4042 ("Duties of Bureau of Prisons") which provides:

> The Bureau of Prisons, under the direction of the Attorney General, shall—
>      (1) have charge of the management and regulation of all Federal penal and
>      correctional institutions;
>      (2) provide suitable quarters and provide for the safekeeping, care, and
>      subsistence of all persons charged with or convicted of offenses against the
>      United States, or held as witnesses or otherwise;
>      (3) provide for the protection, instruction, and discipline of all persons
>      charged with or convicted of offenses against the United States.

ECF 1, at 21–22; 18 U.S.C. § 4042.  In Plaintiff's view, staff at FCI-Cumberland breached their

duty of care which resulted in him contracting COVID-19 and "Long COVID."  ECF 1, at 22.  He

further claims that the Attorney General's March 26, 2020, and April 3, 2020, directives to the

BOP to prioritize the use of home confinement to reduce the spread of COVID-19 were not

followed at FCI-Cumberland.  *Id*.  He states that he requested consideration of release to home

confinement, but staff did not appropriately consider the required factors in assessing his request and denied it.  *Id*. at 22–23.  Plaintiff maintains that "most all other inmate requests for placement into home confinement" were also denied.  *Id*. at 23.

In his complaint, Plaintiff asserts violations of his Eighth Amendment rights under *Bivens* as well as multiple torts claims under the FTCA.  *Id.* at 27–30.  Plaintiff brings negligence and intentional infliction of emotional distress claims under the FTCA for the conditions and management of FCI-Cumberland "which resulted in [P]laintiff's contracting COVID-19" and for placing the inmate that had been hospitalized back in general population housing while he was still positive for COVID-19.  *Id.*  The Court will refer to these claims as the "conditions of confinement" FTCA claims.  Plaintiff also asserts negligence and intentional infliction of emotional distress claims for Defendants' "refusing to treat [P]laintiff's asthma."  *Id.*  Additionally, Plaintiff asserts a claim for invasion of privacy based upon the opening of his legal mail.  *Id.* at 27.  Finally, Plaintiff brings *Bivens* claims, asserting violations of his Eighth Amendment rights, against Defendant Beard for the conditions at FCI-Cumberland during this time and against Defendants Foote, Gera, Pearsall, and Dr. Moubarek for failure to treat his asthma.  *Id.* at 27–30.  Each claim is asserted against Defendants in their individual and official capacities.  *Id.*  Plaintiff seeks a declaratory judgment and compensatory and punitive damages.[3]  *Id*. at 31.

Defendants assert that Plaintiff's tort claims against the individual Defendants must be dismissed for a lack of subject matter jurisdiction since they were acting within the scope of their employment, making them immune from tort liability.  ECF 37-1, at 7.  They also assert that the conditions of confinement claims are barred by the discretionary function exception of the FTCA,

---

[3] Plaintiff's request for injunctive relief was made moot by his transfer out of FCI-Cumberland and is therefore no longer before this Court.  *See* ECF 19 (Order denying injunctive relief as moot).

28 U.S.C. § 2680(a).  *Id.*  They claim that Plaintiff failed to exhaust administrative remedies for his invasion of privacy claim in connection with his legal mail and that he has failed to state a plausible tort claim for invasion of privacy, intentional infliction of emotional distress, and negligence.  *Id.*

## II.   LEGAL STANDARDS

A motion to dismiss for lack of subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1).  *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).  Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction.  *See Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction."  *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf,* 932 F.Supp. 676, 679 (D. Md. 1996)).

A motion to dismiss for failure to state a claim upon which relief may be granted is governed by Federal Rule of Civil Procedure 12(b)(6).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted); *see also Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). Put another way, "an unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Commonwealth of Va.*, 655 F.3d 342, 346 (4th. Cir. 2011).

The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted).

When presented with a motion to dismiss or, in the alternative, a motion for summary judgement, the disposition of the motion "implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 625 (D. Md. 2020). "If,

on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

In this case, Defendants' motion is styled as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. ECF 37. The Court exercises its discretion to consider Defendants' motion as a motion to dismiss under Rule 12(b)(6). *See Pevia*, 443 F. Supp. 3d at 625. In addition to Plaintiff's complaint and the documents attached thereto, the Court also considers Plaintiff's administrative claims, ECF 37-2, at 14–64, and the United States Attorney's certification, ECF 37-4, at 2–3, attached to Defendants' motion whose authenticity is unquestioned. As Plaintiff's administrative complaints a prerequisite to his invasion of privacy claim, and Plaintiff's administrative grievances are referenced in the attachments to Plaintiff's complaint, they are integral to his claim. *See* 28 U.S.C. § 2675(a); ECF 1-2, at 26 (email confirming that Plaintiff had filed an "Attempt at Informal Resolution" regarding his concerns over the opening of his legal mail). The United States Attorney's certification is integral because it impacts whether the Court has jurisdiction over Plaintiff's claims. *See infra*, II(a)(1).

III.    **DISCUSSION**

A.    *Bivens* **Claims**

In his Opposition Response, Plaintiff voluntarily dismisses his *Bivens* claims alleging an Eighth Amendment violation against Defendants Foote, Gera, Pearsall, and Dr. Moubarek. ECF 42, at 16–17. As such, these claims are dismissed.

In his original complaint, Plaintiff also alleged that the BOP itself violated the Eighth Amendment in an apparent *Bivens* claim. ECF 1, at 28. As *Bivens* provides an avenue for a

plaintiff to bring suit against a federal official but not a federal agency, this claim is also dismissed. *See Carlson v. Green*, 446 U.S. 14, 18 (1980) ("*Bivens* established that the victims of a constitutional violation by a federal *agent* have a right to recover damages against the *official* in federal court . . . ." (emphasis added)).

Thus, only Plaintiff's FTCA claims remain.

### B.      FTCA Claims

Under the FTCA, the United States is liable, as a private person, for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting under the scope of his office or employment." 28 U.S.C. § 1346(b) (1994).  In order for a claim to be actionable under the FTCA, it must be (1) against the United States; (2) for money damages; (3) for injury, loss of property, personal injury, or death; and (4) caused by the negligent or wrongful act or omission of a government employee who was (5) acting within the scope of their employment (6) under circumstances where the United States, if it were a private person, would be liable.  *Brownback v. King*, 141 S. Ct. 740, 746 (2021) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475–76 (1994).

As a waiver of sovereign immunity, the FTCA is to be narrowly construed.  *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992).  If the FTCA is not applicable, or if an exception to the FTCA applies and removes the claim in question from the FTCA's purview, the government has not waived immunity, and the Court lacks jurisdiction.  *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001).  Prior to filing suit in this Court, an FTCA Plaintiff must file an administrative claim.  28 U.S.C. § 2675(a); *see also McNeil v. United States*, 508 U.S. 106, 112 (1993).  It is the Plaintiff's burden to demonstrate that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to the claim being raised.

*Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). Failing that demonstration, the claim must be dismissed. *See Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001).

Defendants argue that Plaintiff's claims against the individual Defendants must be dismissed because they were acting in the scope of their employment and cannot be held liable under the FTCA; that Plaintiff's conditions of confinement claims must be dismissed under the discretionary function exception to the FTCA; that Plaintiff's negligence and intentional infliction of emotional distress claims based upon a lack of medical treatment must be dismissed for failure to state a claim; and that Plaintiff's invasion of privacy claim must be dismissed for failure to exhaust administrative remedies. ECF 37, at 7–8. The Court addresses each of these arguments in turn.

### 1.   Individual Defendants

Plaintiff asserts tort claims against the individual defendants named in his complaint under the FTCA. ECF 1, at 27–30. An FTCA claim may not be pursued against government employees for actions committed in the course of their employment. *See Osborn v. Haley*, 549 U.S. 225, 229 (2007). A claim against the United States is the exclusive remedy and "[a]ny other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred." 28 U.S.C. § 2679(b)(1). This provision confers absolute immunity on federal employees from common law torts occurring during the course of their official duties. *See Osborn*, 549 U.S. at 229. Per 28 U.S.C. § 2679(d), the Attorney General can certify an individual's actions as occurring within the scope of their office or employment, and the Court is bound to accept such a certification. *See Osborn*, 549 U.S. at 241 (holding that district courts have "no authority to

return cases to state courts on the ground that the Attorney General's certification was unwarranted").

Defendants have provided a certification issued on May 19, 2022, from the United States Attorney for the District of Maryland which certifies that the individual Defendants in this case were acting within the scope of their employment during the incidents described in Plaintiff's complaint. ECF 37-4, at 2. Thus, the claims against Warden Beard, Dr. Moubarek, Thomas Gera, Lloyd Pearsall, and Alison Foote must be dismissed, leaving the United States as the sole Defendant.

2. <u>Conditions of Confinement Claims and the Discretionary Function Exception</u>

Immunity is not waived under the FTCA for any claim based upon "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Where the discretionary function exception applies, a federal district court lacks jurisdiction under the FTCA. *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 971 (4th Cir. 1992).

A two-prong test determines whether conduct qualifies for the discretionary function exception. *See United States v. Gaubert*, 499 U.S. 315, 322–23 (1991). The first inquiry is whether the governmental conduct at issue involves an element of judgment or choice. *See id.* If "a statute, regulation, or policy prescribes a specific course of action," then there is no judgment or choice, and the discretionary function exception does not apply. *Rich v. United States*, 811 F.3d 140, 144 (4th Cir. 2015) (citation omitted). The Fourth Circuit has explained:

> Conduct involves an element of judgment or choice unless a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." A document that sets forth recommended actions or improvements does not demonstrate the absence of discretion. Nor does a regulation that,

14

although requiring adherence to a general standard, fails to dictate a course of action for achieving that standard. Rather, the source of the directive must either expressly prescribe or proscribe "a particular course of action" in order to eliminate an agency's discretion for the purposes of the discretionary function exception.

*Bulger v. Hurwitz*, 62 F.4th 127, 142–43 (4th Cir. 2023) (citations omitted). Next, if the conduct did contain an element of judgment or discretion, the Court must assess whether that judgment "was one that the exception was designed to protect, namely, a judgment based on considerations of public policy." *Id*. (citing *Gaubert,* 499 U.S. at 322–23).

Though this exception is most obviously relevant to negligence claims, it can apply to intentional tort claims, as well, if the conduct underlying the intentional tort allegation was "authorized and implemented consistent with federal law and the Constitution of the United States." *Medina v. United States*, 259 F.3d 220, 226 (4th Cir. 2001). Thus, the Court assesses the applicability of this exception to Plaintiff's negligence claim and his claim for intentional infliction of emotional distress based upon the conditions of confinement at FCI-Cumberland during the COVID-19 pandemic.

      i.    *The conduct at issue involved an exercise of discretionary judgment.*

The Court begins with the first prong of this analysis. The BOP is required to provide for the "protection," "safekeeping," and "care" of "all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2), (3). The BOP retains discretion regarding the implementation of those mandates. *Rich*, 811 F.3d at 145 (finding that decisions regarding separation of certain inmates, transfers, and housing assignments satisfy the first prong of the discretionary function exception). There are no specifically required courses of action described in the BOP's charge to protect, care, and keep safe all prisoners committed to its custody; those particular decisions are left to the agency's discretion. *See Bulger*, 62 F.4th at 143 ("The statute

does not dictate any particular course of action or proscribe certain conduct" regarding where to house a BOP prisoner).

Beyond 18 U.S.C. § 4042, Plaintiff points to a number of memoranda and several guidelines and guidance documents he claims governed Defendants' conduct. ECF 1, at 10–22. First, Plaintiff points to the CDC guidance on managing COVID-19 in correctional facilities. *Id.* at 10 (citing Centers for Disease Control and Prevention, Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, (2020) https://www.bop.gov/foia/docs/CDCCorrectionalfacilityguidance3.23.pdf ("CDC Interim Guidance")). But this document is not mandatory. It is exactly what it claims to be: guidance. At the outset, the document states that it "is intended to provide guiding principles for healthcare and non-healthcare administrators of correctional and detention facilities . . . to assist in preparing for potential introduction, spread, and mitigation of COVID-19 in their facilities." CDC Interim Guidance, at 1. The CDC further recognizes that the "guidance may need to be adapted based on individual facilities' physical space, staffing, population, operations, and other resources and conditions." *Id.* Nothing in the guidance *requires* specific actions to be taken by BOP staff; rather, the guidance provides suggestions that are generalized and employs the use of terms such as "if possible" and "where security concerns allow." *Id.*

The other documents Plaintiff cites as those by which Defendants were bound are similarly advisory. The "Home Confinement" memo Plaintiff attached as an exhibit to his complaint states on its face that it "provides [] guidance and direction" and lists factors to be considered by BOP staff in making discretionary decisions on which individuals to release on home confinement. *See* ECF 1-2, at 15–16. The BOP COVID-19 Pandemic Response Plan provides guidance such as "[r]ecommended levels of PPE" and makes clear that the appropriate level of PPE "will vary"

based on factors such as "the type of contact with inmates" and "the type of procedure being performed."  Federal Bureau of Prisons, COVID-19 Pandemic Response Plan, at 25 (2021) https://www.bop.gov/foia/docs/COVID_pandemic_plan_docs_v6_2021_07_16.pdf   ("Pandemic Response Plan"); *see also* ECF 1, at 11 (citing "FCI Cumberland COVID response guidelines"). In discussing steps to be taken when staff have potential exposure to COVID-19, the Response Plan provides only "[g]uidance" without imposing mandatory requirements.  Pandemic Response Plan, at 15, 54.

Here, none of the policies Plaintiff highlights "expressly prescribe or proscribe 'a particular course of action.'" *Bulger*, 62 F.4th at 143 (citation omitted).  Instead, the very language of these documents makes clear that, though they "set[] forth recommended actions or improvements," they "do[] not demonstrate the absence of discretion." *Id.* at 142.  As such, the conduct at issue implicates discretion.

> ii.  *The BOP's exercise of discretionary judgment was based on considerations of public policy.*

The second prong of the test focuses on whether the discretionary judgment underlying the conduct at issue is one that falls under the purview of the discretionary exception: "a judgment based on considerations of public policy." *Id.* at 322–23.  "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 325.  The Fourth Circuit has found that decisions such as the placement of prisoners within a prison "are precisely the kind of determinations that the discretionary function exception is intended to protect" because "these decisions invoke several policy considerations for prison administrators." *Rich*, 811 F.3d at 146.

17

Here, the decisions Plaintiff challenges are Defendants' "refus[al] to treat [P]laintiff's asthma," and the Defendants' handling of COVID-19 conditions in the facility "which resulted in [P]laintiff's contracting COVID-19." ECF 1, at 27–28.  This Court has previously found that the BOP staff were exercising discretion grounded in considerations of public policy, and thus the discretionary function exception to the FTCA applied, when an incarcerated plaintiff challenged BOP staff's COVID response, pointing to the same CDC guidance and the BOP Response Plan at issue here.  *See Johnson v. United States*, Civ. No. TDC-22-1647, 2023 WL 7635083, at *4–5 (D. Md. Nov. 14, 2023).  The same logic applies in this case.  The actions taken by Defendants in managing BOP's COVID-19 response, including their medical assessment of Plaintiff and implementation of sanitation and social distancing, were discretionary actions that fall under the FTCA's discretionary function exception.  *See id.* (BOP staff's decisions on matters such as where to house the plaintiff amidst an outbreak, how many individuals to house in a given unit, and whether to transfer the plaintiff to another facility were discretionary actions under the FTCA); *see also Farmer v. United States*, Civ. No. 0:21-2572-TMC, 2022 WL 3500363, at *5 (D.S.C. Aug. 18, 2022) (dismissing FTCA claim regarding prison's failure to follow statutory and CDC guidelines with respect to COVID-19 under discretionary function exception); *see also Nichols v. United States*, No. 21-50368, 2022 WL 989467, at *3 (5th Cir. Apr. 1, 2022) (concluding that the discretionary function exception applied to prisoner's claim that the government failed to establish, maintain, and follow policies related to controlling infectious diseases maintaining care, custody, and control of prisoners and negligently maintained care, custody, and control of him); *Monk v. United States*, Civ. 1:22-1030-CLM, 2023 WL 5019898, at *6 (N.D. Ala. Aug. 7, 2023). ("COVID-related claims brought under 18 U.S.C. § 4042(a), 3624(c)(2), the CARES Act, and CDC guidelines are barred by the discretionary function exception.").  This case, like those listed

above, pertains to government employees exercising discretion in the manner that the discretionary function exception seeks to protect.  As such, the discretionary function applies, and Plaintiff's negligence and intentional infliction of emotional distress claims under the FTCA based on conditions of confinement are dismissed.[4]

### 3.  Invasion of Privacy Claim

Plaintiff asserts that his legal mail was opened outside of his presence and alleges those actions were an invasion of his privacy.  ECF 1, at 26–27.  Before this Court may consider a claim under the FTCA, the plaintiff must have filed an administrative claim.  28 U.S.C. § 2675(a); *see also McNeil*, 508 U.S. at 112; *Plyler*, 900 F.2d at 42.  There are also timing limitations on such claims:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401.

Plaintiff filed several administrative claims relating to the opening of his legal mail and the corresponding alleged invasion of privacy.  He first filed an administrative claim for invasion of privacy on July 20, 2020.   ECF 37-2, at 14–15.  He claimed that the mail room staff at FCI-Cumberland opened and read over 100 parcels of legal mail sent to him from his lawyers between June 2019 and July 2020.  *Id.* at 14.  The claim was denied in a letter dated November 10, 2020. *Id*. at 16.  On July 28, 2020, Plaintiff filed a second administrative claim for invasion of privacy,

---

[4] To the extent that Plaintiff argues that the discretionary function exception should not apply to unconstitutional conduct, *see* ECF 42, at 5–6, his argument fails.  The FTCA provides a remedial scheme for negligent conduct and does not provide a remedy for a constitutional claim.  *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims," and thus, such claims are "not cognizable").

asserting that legal mail from this Court and the Ninth Circuit Court of Appeals was delivered to him after it had been opened. *Id.* at 18–20. This claim was also denied on November 10, 2020. *Id*. at 21. On December 11, 2020, Plaintiff filed a third administrative claim alleging invasion of privacy because a letter from his attorney was opened and read by his case manager. *Id.* at 23–24. In a letter dated May 20, 2021, this final claim was denied. *Id*. at 26.

Given that Plaintiff's final administrative decision was mailed on May 20, 2021, any action based upon the underlying claim must have been filed by November 20, 2021, to be timely. Plaintiff filed his complaint in this Court on January 31, 2022, well after the six-month time period for initiating an FTCA complaint had expired for his most recent claim. *See* ECF 1 (showing date filed as January 31, 2022). His invasion of privacy claim is, therefore, barred as untimely and must be dismissed.

### 4.   Intentional Infliction of Emotional Distress Based on Medical Treatment

Plaintiff claims that Defendants' failure to treat his asthma caused him anxiety and constituted intentional infliction of emotional distress. ECF 1, at 27–30. "Since the negligent act or omission is alleged to have occurred in Maryland, Maryland law governs the United States' liability in this case." *Miller v. United States*, 308 F. Supp. 2d 604, 607 (D. Md. 2004) (citing *Richards v. United States*, 369 U.S. 1, 8–9 (1962), *aff'd*, 369 U.S. 1 (1962)). Applying Maryland choice of law rules, "a tort action [is] governed by the substantive law of the state where the wrong occurred." *Id.* (citing *In re: Sabin Oral Polio Vaccine Prod. Liab. Litig.*, 774 F. Supp. 952, 954 (D. Md. 1991), *aff'd*, 984 F.2d 124 (4th Cir.1993)).

Under Maryland law, "[i]ntentional infliction of emotional distress requires the following elements: '1) the conduct must be intentional or reckless, 2) the conduct must be extreme and outrageous, 3) there must be a casual connection between the wrongful conduct and the emotional

distress, and 4) the emotional distress must be severe.'" *Mixter v. Farmer*, 81 A.3d 631, 637 (Md. App. 2013) (quoting *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)).  A claim for intentional infliction of emotional distress is to be "used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Id.* (citation omitted).

The fourth element, the presence of severe emotional distress, is dispositive here. Plaintiff's sole allegation regarding the level of emotional distress he suffered due to Defendants' actions is that he "suffer[ed] anxiety" and experienced "severe depression." ECF 1, at 27, 30. These bare statements are not sufficient to plead severe emotional distress. *See Awah v. Univ. of Md. Med. Sys. Corp.*, Civ. No. 20-02641-LKG, 2023 WL 2467736, at *4 (D. Md. Feb. 24, 2023), *appeal dismissed*, No. 23-1251, 2023 WL 5925542 (4th Cir. May 30, 2023) (finding that plaintiff had not pled severe emotional distress when Plaintiff alleged that he had "suffered severe emotional distress, mental anguish, humiliation, and a strong urge to smoke cigarettes").

Plaintiff's intentional infliction of emotional distress claim based on the provision of inadequate medical care, therefore, is dismissed with leave to amend.  Plaintiff is given thirty days to amend his complaint to state a claim for intentional infliction of emotional distress, and he is warned that if he fails to do so, this claim will be dismissed with prejudice.

### 5.   Negligent Medical Treatment

The Court next considers Plaintiff's medical malpractice negligence claim.  "A prima facie case of medical malpractice . . . 'must normally consist of evidence which (1) establishes the applicable standard of care, (2) demonstrates that this standard has been violated, and (3) develops a causal relationship between the violation and the harm complained of.'" *Fitzgerald v. Manning*, 679 F.2d 341 (4th Cir. 1982) (*citing Kosberg v. Wash. Hosp. Ctr., Inc.*, 394 F.2d 947, 949 (D.C.Cir. 1968)).  Questions relating to "the substantive elements of a medical malpractice suit [] are all questions to be determined by state law." *Id.*

21

Under Maryland law, "[t]here is a presumption that the doctor has performed his medical duties with the requisite care and skill." *Riley v. United States*, 248 F. Supp. 95, 97 (D. Md. 1965) (citation omitted).  Generally, a doctor's duty "is to exercise the degree of care or skill expected of a reasonably competent health care provider in the same or similar circumstances." *Crise v. Md. Gen. Hosp., Inc.*, 69 A.3d 536, 553 (Md. App. 2013); *see also* Md. Code Ann., Cts. & Jud. Proc. § 3-2A-02(c)(1) (stating that a health care provider is liable for damages only if "it is established that the care given by the health care provider is not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time").

Here, Plaintiff has alleged that he has asthma, that he has suffered from several asthma attacks, particularly during the height of the COVID-19 pandemic, and that he has requested an inhaler or other treatment for his asthma several times. ECF 1, at 23–26.  He further asserts that, after being told by Defendant Gera that he could only be given an inhaler after medical staff observed him wheezing, he requested medical attention during an asthma attack, but was never seen in response to that request.  *Id.* at 15–16.  Though Defendants offer evidence to dispute Plaintiff's claims, *see, e.g.*, ECF 37-3, at 2–6, the Court considers only the allegations in the complaint and other integral documents in considering a motion to dismiss, *see Fusaro*, 930 F.3d at 248.

Plaintiff's allegations regarding the treatment (or lack thereof) of his asthma are deeply concerning, but he pleads no applicable duty of care for the medical staff at FCI-Cumberland. Plaintiff provides only the broad standard outlined in 18 U.S.C. § 4042 that the BOP must "provide for the . . . care and subsistence" of incarcerated persons.  ECF 1, at 21.  This standard, which provides ample discretion to BOP staff, as discussed above, does not set out a medical duty of

care.  The declaration of Dr. Susanne Martin, attached to Plaintiff's complaint, provides no articulation of the duty of care that Defendants owed to Plaintiff, only that Plaintiff "has a history of asthma requiring the intermittent use of an inhaler," which made him "more likely to be hospitalized from COVID-19."  *Id.* at 3.  The Court is not a medical professional.  Without any alleged medical duty of care, the Court cannot assess Plaintiff's claim, and Plaintiff has not pled a prima facie case of medical malpractice negligence.

Plaintiff's medical malpractice negligence claim, therefore, is dismissed with leave to amend.  Plaintiff is given thirty days to amend his complaint to state a claim for medical negligence, and he is warned that if he fails to do so, this claim will be dismissed with prejudice.

## CONCLUSION

For the reasons above, Defendants' motion to dismiss is **GRANTED**.  Plaintiff's claims against the individual Defendants, in both their individual and official capacities, are **dismissed** with prejudice.  Plaintiff's *Bivens* claims are **dismissed** with prejudice.  Plaintiff's conditions of confinement FTCA claims based on FCI-Cumberland's handling of COVID-19 are **dismissed** with prejudice.  Both Plaintiff's negligence claim and his intentional infliction of emotional distress claim based on Defendants' failure to provide adequate medical care are **dismissed without prejudice**, **with leave to amend**.  Plaintiff has **thirty days** from the date of this decision to amend his complaint with respect to only the negligence and intentional infliction of emotional distress claim based on Defendants' alleged failure to provide adequate medical care.

February 9, 2024                                    /s/
Date                                         Brendan A. Hurson
                                            United States District Judge